UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FILED

AUG 2 5 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

KEITH TAYLOR,

Plaintiff,

v.

FANNIE MAE, and DAVID MAGIDSON,

Defendants.

Civ. Act. No. 11-cv-01189 (RCL)

## MEMORANDUM OPINION

Plaintiff Keith Taylor ("Taylor") seeks declaratory relief and damages for alleged retaliatory employment termination. Taylor alleged that defendants, Fannie Mae and David Magidson (individual, "Fannie Mae" and "Magidson", or collectively "defendants"), retaliated against him by wrongfully terminating his employment because he raised concerns that Magidson was reporting fraudulent data to federal regulators. Taylor alleged that his termination violated the Dodd-Frank Act, 15 U.S.C. § 78u-6 (2012), and the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A (2012),[1] and that his termination was a wrongful discharge in violation of public policy.[2] Defendants seek summary judgment of plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. Defendants argue that plaintiff did not engage in any activity protected by SOX and that his public policy claim is deficient. For the following reasons, defendants' Motion for Summary Judgment will be granted.

---

[1] The parties agree that Taylor's Sarbanes-Oxley claim is coextensive with his claim under the Dodd-Frank Act. Pl.'s Opp'n to Defs. Mot. for Summ. J., ECF No. 25, 22 n.4.

[2] Taylor's Complaint also included a *Bivens* action against Magidson for violation of his First Amendment right to speak freely on matters of public concern. Taylor conceded that this Court's decision in *Herron v. Fannie Mae*, 857 F. Supp. 2d 87 (D.D.C. 2012) rendered his *Bivens* claim moot. Pl's Opp'n to Defs. Mot. for Summ. J., ECF No. 25, 1 n.1.

1

I.  **BACKGROUND**

Taylor was hired by Fannie Mae as an Operational Risk Analyst III in spring 2010. On September 27, 2010, Magidson, Fannie Mae's vice president of Risk and Controls for Operations and Technology and Taylor's second-level supervisor, asked Taylor to provide him with information regarding trending in operational incidents. At the time, Fannie Mae was implementing a process called the software development life-cycle ("SDLC"). Magidson sought information from Taylor to determine whether SDLC efforts had reduced operational incidents. From the information Taylor provided, Magidson mistakenly calculated that technology-related operation incidents had dropped 60% from 2009 to 2010. The mistaken statistic was then disseminated to Fannie Mae employees and presented to Fannie Mae's Senior Management Group and the Federal Housing Finance Agency ("FHFA"), Fannie Mae's regulator. After several questions about the reliability of the 60% statistic, Magidson scheduled a meeting with Taylor and Taylor's immediate supervisor, Jill Oliver ("Oliver"), to discuss the data. During that meeting on November 4, 2011, Magidson realized that his calculations were incorrect and that he had misunderstood the data Taylor provided. Magidson then prepared a retraction of the incorrect 60% statistic.

Fannie Mae has a SOX Business Team that is a designated internal organization with expertise to determine whether an identified risk has SOX implications. Fannie Mae makes available to its employees an operational incident database, ACCORD. Operational risk professionals who suspect that they are confronted with an operational incident that has SOX or financial reporting implications are required to log the incident in ACCORD so that the SOX Business Team may evaluate the incident. Fannie Mae also has a Compliance and Ethics Department. The Fannie Mae Code of Conduct requires all employees to report any suspicions

about potential violations of law. Neither Taylor nor Oliver contacted the SOX Business Team or the Compliance and Ethics Department and nor did they log an incident in the ACCORD system regarding Magidson's use of the incorrect statistic.

In early 2011, Magidson was instructed by his manager and second-level supervisor to "shape-shift" his organization. To accommodate this instruction, Magidson engaged in a reduction-in-force which resulted in Taylor's termination on April 21, 2011. After his termination, Taylor filed a claim with Fannie Mae's Compliance and Ethics Department that Magidson had violated the company's Code of Conduct. Taylor filed suit against Fannie Mae in this Court on June 28, 2011. Compl., ECF No. 1. This Court dismissed the case for arbitration on March 20, 2012. Order, ECF No. 13. On September 6, 2013, the case was reopened after the conclusion of a nonbinding arbitration process. Order, ECF No. 18. On December 30, 2012, defendants moved for summary judgment. Defs. Mot. for Summ. J., ECF No. 24. Taylor filed his Opposition to the Motion for Summary Judgment on January 29, 2014. Pl.'s Opp'n to Defs. Mot. for Summ. J., ECF No. 25. Defendants filed their Reply to the Opposition on February 12, 2014. Reply to Opp'n to Defs. Mot. for Summ. J., ECF No. 26.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). All justifiable inferences are to be drawn in favor of the nonmoving party, and the moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 322.

3

"A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson*, 477 U.S. at 248). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *MDB Commc'ns, Inc. v. Hartford Cas. Ins. Co.*, 479 F. Supp. 2d 136, 140 (D.D.C. 2007). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

### III. ANALYSIS

#### A. Violation of the Sarbanes-Oxley ("SOX") Act

SOX whistleblower provisions protect employees of publicly traded companies who provide information or assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of one of six enumerated federal fraud provisions. 18 U.S.C. § 1514A(a)(1); 29 C.F.R. § 1980.102(a)(1) (2014). The information or assistance must be provided to or the investigation must be conducted by a Federal regulatory or law enforcement agency, any Member or committee of Congress, or a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate and resolve misconduct). 18 U.S.C. § 1514A(a)(1); 29 C.F.R. § 1980.102(a)(1). An employer may not discharge, demote, suspend, threaten, harass or in any other manner retaliate against the employee in the terms and conditions of employment because

of the employee's engagement in SOX-protected activity. 18 U.S.C. § 1514A(a)(1); 29 C.F.R. § 1980.102(a)(1).

To establish a prima facie SOX whistleblower retaliation claim, Taylor must show that: (i) he engaged in protected activity; (ii) the defendants knew of the protected activity; (iii) he suffered an unfavorable personnel action; and (iv) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action. 29 C.F.R. § 1980.104(e)(2); *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 344 (4th Cir. 2014); *Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1129 (10th Cir. 2013); *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013); *Wiest v. Lynch*, 710 F.3d 121, 129 (3d Cir. 2013).

Defendants dispute whether Taylor engaged in a protected activity. Defendants argue that Taylor failed to "definitively and specifically" relate his communication to Magidson about Magidson's mistake to one of the six enumerated violations listed in 18 U.S.C. § 1514A(a)(1). As the Administrative Review Board ("ARB") has recognized, Taylor need not show that the protected activity related "definitively and specifically" to one of the six enumerated categories. *Sylvester v. Paraxel Int'l LLC*, No. 07-123, 2011 WL 2165854, *14–15 (DOL Adm. Rev. Bd. May 25, 2011). Instead, to demonstrate that he engaged in SOX-protected activity, Taylor must show that he reasonably believed that Magidson's conduct violated one of the six categories.

Taylor must show that he had both a subjective belief and an objectively reasonable belief that "the conduct he complained of constituted a violation of relevant law." *Sylvester*, 2011 WL 2165854, at *11. "Subjective reasonableness requires that the employee 'actually believed the conduct complained of constituted a violation of pertinent law.'" *Id.* (quoting *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008)). Objective reasonable belief "'is evaluated based on

the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.* (quoting *Harp v. Charter Commc'ns*, 558 F.3d 722, 723 (7th Cir. 2009)). The legislative history of SOX makes clear that its protections were "'intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1002 (9th Cir. 2009) (quoting 148 Cong. Rec. S7418–01 (daily ed. July 26, 2002)). "The critical focus is on whether the employee reported conduct that he or she *reasonably believes* constituted a violation of federal law." *Sylvester*, 2011 WL 2165854, at *15; *Wiest*, 710 F.3d at 131 (finding that the *Sylvester* interpretation of "reasonable belief" was entitled to *Chevron* deference).

The ARB's rejection of the "definitive and specific" requirement is entitled to deference under *Chevron, U.S.A. v. N.R.D.C.*, 467 U.S. 837 (1984). When Congress "has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 842–43. If the statute is "'silent or ambiguous with respect to the specific issue' the court must defer to the agency's interpretation if it is reasonable." *Citizens Coal Council v. Norton*, 330 F.3d 478, 481 (D.C. Cir. 2003) (quoting *Chevron*, 467 U.S. at 843). Congress has not defined what "reasonable belief" means in the SOX context. We find that the ARB's interpretation of "reasonable belief" is reasonable in light of this ambiguity and is entitled to *Chevron* deference.

Taylor has not demonstrated that he reasonably believed his conversation with Magidson on November 4, 2011 was SOX-protected activity. Taylor has not shown that he possessed the subjective belief that Magidson's actions were illegal or fraudulent because he did not report his concerns about Magidson's use of the 60% statistic. Taylor had at least three possible avenues

for reporting his concerns about the 60% statistic, but he did not do so until after his termination. As an operational risk professional, Taylor had knowledge of these reporting devices and their importance. Magidson actually scheduled the meeting with Oliver and Taylor to understand the data, and at no time did Taylor go beyond his assigned job duties to inform or assist in the investigation of Magidson's actions. Additionally, Taylor does not disagree that the "main purpose" of the meeting with Oliver and Magidson was to make sure "that it was understood from [Oliver] and [Magidson] that [he] was cleared of doing anything wrong." Defs. Mot. for Summ. J., Ex. 14. Taylor has not demonstrated that he "actually believed" the conduct complained of constituted a violation of SOX.

Taylor has also failed to demonstrate that a reasonable person would consider Magidson's use of the 60% statistic to be a violation of SOX. Like Taylor, Oliver was an operational risk professional and she had knowledge of the various mechanisms for reporting illegal or potentially fraudulent activity at Fannie Mae. Oliver did not report any concerns about Magidson's use of the 60% statistic. Oliver did not believe Magidson's use of the 60% statistic to be a violation of the SOX provisions. Instead Oliver recognized that "there was incorrect information being shared" and she "suspected it was just a management issue." Defs. Mot. for Summ. J., Ex. 2. A reasonable person would not consider Magidson's mistaken use of the 60% statistic as anything more than a misunderstanding. Upon discovering the mistake, Magidson sought to resolve the misunderstanding by discussing the data with Taylor and Oliver. The mistaken data, once understood, was retracted.

### B. Wrongful Discharge in Violation of Public Policy

In the District of Columbia, a "very narrow" exception to the at-will employment doctrine exists for plaintiffs who can demonstrate that they were terminated in violation of public

policy. *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1329 (D.C. Cir. 1999); *Potts v. Howard Univ. Hosp.*, 736 F. Supp. 2d 87, 97 (D.D.C. 2010). "Such an action must be firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." *Potts*, 736 F. Supp. 2d at 97 (quoting *Warren v. Coastal Int'l Secs., Inc.*, 96 Fed. App'x. 722, 722–23 (D.C. Cir. 2004)).

The District of Columbia has recognized that where there is already a statutory framework in place, there is "no need to create a new exception to the at-will employment doctrine." *Carter v. District of Columbia*, 980 A.2d 1217, 1225–26 (D.C. 2009); *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 50–51 (D.D.C. 2012). Taylor looks to 18 U.S.C. § 1001(a), a prohibition against knowingly or willfully making a material statement within the jurisdiction of a branch of the U.S. government, as the anchor for his public policy claim. 18 U.S.C. § 1001(a), however, already includes a statutory remedy for violation and a suitable remedy for termination in violation of the policy expressed in this statute already exists under the Sarbanes-Oxley and Dodd-Frank statutes. Taylor's claims do not fit within the narrow exception to the at-will employment doctrine.

## IV.   CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted. A separate Order accompanies this Memorandum Opinion.

Signed Royce C. Lamberth, United States District Judge, on August 21, 2014.